UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ALFRED W.**, *Plaintiff*, v. **COMMISSIONER OF SOCIAL SECURITY**, *Defendant*. | No. 24-cv-08486  **OPINION** |

**APPEARANCES:**

**Jamie Ryan Hall**
LAW OFFICE OF JAMIE R. HALL
24 West Market Street, Suite 3
West Chester, PA 19382

    *On behalf of Plaintiff.*

**Anne Von Scheven**
**Patricia Yvette Dreher**
SOCIAL SECURITY ADMINISTRATION
6401 Security Boulevard
Baltimore, MD 21235

    *On behalf of Defendant.*

1

**O'HEARN, District Judge.**

This matter comes before the Court on Plaintiff Alfred W.'s[1] ("Plaintiff") appeal from a denial of Social Security disability benefits by the Acting Commissioner of Social Security ("Commissioner"). (ECF No. 1). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, the Court **AFFIRMS** the Commissioner's decision.

I. BACKGROUND

The Court recites herein only those facts necessary for its determination of this appeal.

A. Administrative History

Plaintiff filed an application for a period of disability and Disability Insurance Benefits ("DIB") on May 5, 2021, alleging an onset date of disability beginning May 29, 2018[2] due to post traumatic stress disorder ("PTSD"), generalized anxiety disorder, major depressive disorder, and problems with his back and both shoulders. (AR 183–187, 221). Plaintiff's claims were denied initially on November 16, 2021 and upon reconsideration on September 6, 2022. (AR 79–88, 93–102).

On September 20, 2022, Plaintiff filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (AR 103–104). A hearing was held on June 23, 2023. (AR 30–59). Plaintiff, who was represented by counsel, testified, as did a Vocational Expert ("VE"). (*Id.*). The ALJ issued a Decision Denial on September 19, 2023. (AR 7–29). The Appeals Council denied Plaintiff's request for review of the ALJ's decision on June 24, 2024. (AR 1–6). Plaintiff timely filed an

---

[1] Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by first name and last initial.

[2] Plaintiff appeared to amend the alleged onset date to May 5, 2021 at the hearing. (AR 36.) However, the ALJ adjudicated the claim based upon the original alleged onset date of May 29, 2018, (AR 12), and Plaintiff references that date in his brief. (Pl.'s Br., ECF No. 9 at 6–7.) Accordingly, the Court uses the May 29, 2018 onset date.

2

appeal on August 15, 2024, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). (ECF No. 1).

### B. Plaintiff's Background and Testimony

Plaintiff filed an application for DIB on May 5, 2021, alleging disability beginning May 29, 2018. (AR 183–187). Plaintiff was 59 years old at the time of the alleged onset date, possesses a high school education, and last worked as a truck driver. (AR 40–41, 61).

Plaintiff testified that he was unable to work due to a combination of physical and mental impairments. Specifically, Plaintiff testified that he is unable to work due to pain in his arms, neck, and lower back. (AR 42). However, Plaintiff also reported that cortisone injections and Tylenol helped with his pain. (AR 42, 415). Plaintiff further described difficulty lifting his arms for periods of time, difficulty bending his fingers on his left hand, and requiring frequent breaks between walking, standing, and sitting. (AR 42, 44–45).

As to his mental condition, Plaintiff testified that his diagnosis of PTSD, depression, and anxiety sometimes impairs his memory or concentration, results in panic attacks, difficulty being around crowds or getting along with others, and dizziness. (AR 45–46). However, Plaintiff testified that he is not currently in therapy. (*Id.*). Additionally, despite these claimed limitations, the record reflects Plaintiff is able to complete household tasks such as cleaning, cooking, and shopping, as well as engaging in community volunteer work. (AR 40, 47).

### C. Medical History

Plaintiff has been examined by numerous medical professionals through the pendency of his disability claim. The Court will briefly summarize the relevant medical evidence for purposes of this appeal. This recitation is not comprehensive.

*i. Mental Health*

Plaintiff reports that he is unable to work due to PTSD, generalized anxiety disorder, and major depressive disorder. (AR 224). Prior to Plaintiff's alleged disability onset date of May 29, 2018, Plaintiff received treatment for depression and anxiety from his primary care provider, Toni Seibert, Family Nurse Practitioner ("FNP"). (AR 363–607). Specifically, FNP Seibert began treating Plaintiff in October 2017 for anxiety and depression and prescribed Clonazepam. (AR 443–446). FNP Seibert saw Plaintiff again in November and December 2017 and continued to adjust Plaintiff's medication. (AR 434–442). Plaintiff then attended psychotherapy at Community Counseling Center between January and March of 2018, (AR 345–362), but was discharged due to noncompliance after he stopped attending appointments. (AR 348). At the time, he was diagnosed with acute stress disorder, resulting from a traumatic car accident. (AR 350, 358).

On May 18, 2018, shortly before Plaintiff's alleged disability onset date of May 29, 2018, Plaintiff reported worsening anxiety, which resulted in FNP Seibert recommending Plaintiff recommence therapy. (AR 430–32). At that time, FNP Seibert did not make any changes to Plaintiff's medications based on Plaintiff's preference. (*Id.*). In July 2018, Plaintiff returned to FNP Seibert for worsening anxiety and depression but admitted to not taking his medication due to expense. (AR 427–29). At this time, FNP Seibert increased his dose of Clonazepam. (*Id.*). Plaintiff continued care with FNP Seibert with appointments in December 2018, March 2019, June 2019, August 2019, and December 2019. (AR 395–407, 411–419). In the treatment notes for these five appointments, FNP Seibert consistently describes Plaintiff's anxiety and depression as improved, well controlled, and stable. (*Id.*)

In April 2020, during a visit with FNP Seibert Plaintiff reported a spike in anxiety,[3] but admitted to changing his medication intake. (AR 392–94). FNP Seibert renewed his Clonazepam prescription and created a follow-up plan. (*Id.*). In June 2020, Plaintiff again reported poorly controlled anxiety and daily panic attacks, and FNP Seibert adjusted Plaintiff's medication, switching Plaintiff to Lorazepam instead of Clonazepam. (AR 389–91). FNP Seibert also reiterated her recommendation that Plaintiff should pursue counseling. (*Id.*). Following these adjustments in medication, Plaintiff's anxiety and depression were once again described as improved, well controlled, and stable at the final two appointments of record in February 2021 and March 2022. (AR 381–85, 574–578).

In July 2022, Plaintiff was examined by Wm. Dennis Coffey, Psy.D. for a psychological consultative examination. (AR 608–11) Dr. Coffey's only diagnostic impression was alcohol use disorder, in full sustained remission. (AR 611).

ii. *Physical Health*

In July 2022, Juan Carlos Cornejo, D.O. performed an orthopedic consultive examination on Plaintiff. (AR 615–25). Plaintiff reported difficulties using his left hand, due to an injury to his left thumb in 2000. (AR 615). However, Dr. Cornejo noted that Plaintiff had not received any recent treatment for his alleged pain. (AR 618). And, despite finding decreased flexion of the left thumb and tenderness at the base, Dr. Cornejo opined that Plaintiff had no significant limitations with respect to fingering and handling small objects. (AR 617–18). Dr. Cornejo further observed that Plaintiff retains pinch and grip strength with the left hand, and is able to extend his fingers, make a fist, and oppose his left thumb. (*Id.*). Significantly, Dr. Cornejo opined that Plaintiff "has

---

[3] At the time, Plaintiff cited the then ongoing COVID-19 pandemic as part of the cause of his heightened anxiety. (AR 392).

no significant limitations using the right hand which is his dominant hand for fine and grip manual activities. However, he may have difficulty with frequent use of his left hand secondary to his left thumb pain, per his report." (AR 619). Other than Dr. Cornejo's report, there is no other documentation regarding left hand or thumb symptoms, either in Plaintiff's primary care records or from Plaintiff's visit to an orthopedist for unrelated treatment.

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citation omitted). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citations omitted); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations, quotation marks, and alteration omitted); *see also Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009).

The substantial evidence standard is a deferential standard, and an ALJ's decision cannot be set aside merely because a Court "acting *de novo* might have reached a different conclusion." *Hunter Douglas, Inc. v. N.L.R.B.*, 804 F.2d 808, 812 (3d Cir. 1986) (citations omitted); *see e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are

6

supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citation omitted).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). "The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Id*. The Court has a duty to "'review the evidence in its totality,' and 'take into account whatever in the record fairly detracts from its weight.'" *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018) (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997)). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Hum. Servs.,* 722 F.2d 1150, 1153 (3d Cir. 1983) (citation omitted). Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citation omitted).

### B. Sequential Evaluation Process

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i)–(v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If he is, he is not disabled. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory

7

> requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." A claimant's "[RFC] is the most [he] can still do despite [his] limitations." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled.

*Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (internal citations and footnote omitted) (alterations in original).

## III. ALJ DECISION

At step one, the ALJ found the Plaintiff had not engaged in substantial gainful activity since his alleged onset date of May 29, 2018. (AR 12).

At step two, the ALJ determined that Plaintiff had the following severe impairments: depressive disorder, anxiety disorder, PTSD, alcohol use disorder, right shoulder tendinitis, bilateral shoulder degeneration, chronic sinusitis, chronic obstructive pulmonary disease ("COPD"), syncope and collapse, and cervical and lumbar spine spondylosis. (*Id.*).

At step three, the ALJ found that none of Plaintiff's impairments, individually or in combination, met or medically equaled the severity of any listing. (AR 13). The ALJ found a mild limitation in understanding, remembering, or applying information and moderate limitations in the

remaining three broad functional areas: interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (AR 14–15).

At step four, the ALJ found Plaintiff had the RFC to perform medium work subject to the following limitations:

> [C]an occasionally overhead reach with his bilateral upper extremities. He can climb ramps and stairs occasionally, but he can never climb ladders, ropes, or scaffolds. He can kneel, crouch, and crawl occasionally. The claimant can never work at unprotected heights, never with moving mechanical parts, and never can he operate a motor vehicle or have concentrated exposure to dust, odors, fumes, and pulmonary irritants. Finally, he can perform simple work-related decisions with occasional contact with supervisors, coworkers, and the public. He can occasionally work with changes in the routine work-setting.

(AR 15–16).

In formulating the RFC, the ALJ considered the entire record, including Plaintiff's testimony, treatment history, and opinion evidence. The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical and other evidence of record. (AR 17). The ALJ noted that Plaintiff's mental status examinations were largely unremarkable, his physical exams were generally normal, and his treatment was conservative and intermittent. (AR 17– 21). For example, Plaintiff reported being active, walking several miles per day, and seeking to return to work even after losing his prior job due to a positive drug test rather than medical incapacity. (AR 18–21).

The ALJ considered the July 2022 consultative opinion of Dr. Cornejo, who opined that Plaintiff could walk, stand, and sit for a reasonable amount of time with needed breaks; had no significant limitations in balance or upper extremity use; and had only mild limitations in bending and left-hand use. (AR 20). The ALJ found this opinion partially persuasive, discounting portions as vague or unsupported—particularly with respect to left thumb limitations for which there was

9

no objective evidence—but crediting Dr. Cornejo's overall assessment that Plaintiff could perform medium work. (*Id.*).

The ALJ also considered a June 2023 residual functional capacity questionnaire submitted by FNP Seibert, who opined that Plaintiff would be off task 25% of the workday, could sustain attention for less than 30 minutes, and would miss four days of work per month. (AR 21). The ALJ found this opinion wholly unpersuasive, noting that FNP Seibert was not a specialist in mental health, neurology, or pulmonology—the areas implicated by her assessment—and that her conclusions were inconsistent with both the objective record and Plaintiff's own reported activities, including his continued employment until a positive drug test and his ability to engage in daily living activities. (*Id.*).

Based on the record as a whole, the ALJ limited Plaintiff to a reduced range of medium work with additional postural, environmental, and non-exertional limitations that accounted for his severe but controlled impairments. (AR 16–22).

At step five, the ALJ found that while Plaintiff was unable to perform his past relevant work as a Truck Driver or Gas Tender, he could perform other work that exists in significant numbers in the national economy, including work as a Hospital Food Service Worker, Night Cleaner, or Counter Supply Worker. (AR 22–23). Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act for the relevant time period. (AR 23).

## IV. DISCUSSION

In his appeal, Plaintiff asserts three alleged errors within the ALJ's decision. First, Plaintiff contends that the ALJ improperly discounted the opinion of FNP Seibert due to her area of specialization, the supportability of her findings, and the consistency of her opinion. (Pl.'s Br., ECF No. 9 at 18–22). Second, Plaintiff further contends that, because the ALJ rejected

FNP Seibert's opinion, the ALJ's RFC determination is not supported by a credited medical source and is therefore impermissible. (*Id.* at 22–23). Finally, Plaintiff argues that the ALJ erred in her analysis of Dr. Cornejo's opinion regarding Plaintiff's left-hand use. (*Id.* at 23–24). The Court finds Plaintiff's arguments unpersuasive and, for the reasons that follow, affirms the decision of the ALJ.

### A. The ALJ Provided a Sufficient and Supported Explanation for Discounting the Opinion of FNP Seibert Regarding Plaintiff's Mental Health.

Plaintiff argues it was improper for the ALJ to consider FNP Seibert's lack of specialization and disputes the ALJ's conclusion that her opinion was unsupported and inconsistent. (*Id.* at 18–22). The Court finds this argument lacks merit.

The ALJ must evaluate the persuasiveness of medical opinions in accordance with the factors set forth in 20 C.F.R. § 404.1520c, including specialization, supportability, and consistency. *Lynch v. Comm'r of Soc. Sec.*, No. 23-1982, 2024 WL 2237961, at *2 (3d Cir. May 17, 2024). The Third Circuit has made clear that it is the ALJ—not treating or examining physicians—who must make the ultimate findings on disability. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (citations omitted). In reaching those findings, the ALJ is not bound to accept any medical expert's opinion or theory but is instead entitled to weigh the evidence and draw reasonable inferences, so long as the ALJ considers all relevant evidence and provides some explanation for evidence that is rejected. *Brown v. Astrue*, 649 F.3d 193, 196–197 (3d Cir. 2011) (citation omitted) (further explaining that ALJ has discretion to determine the extent to which any opinion should be credited); *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citation omitted).

Here, the ALJ found FNP Seibert's opinion unpersuasive, citing: (1) Seibert's status as a family medicine provider without specialization in mental health, neurology, or pulmonology; (2) the lack of support for her assessed limitations in her underlying findings; and (3) inconsistency between her opinion and Plaintiff's reported activity level. (AR 21). The Court concludes that the

11

ALJ reasonably considered and weighed these factors, and that the ALJ's conclusion is supported by substantial evidence in the record.

First, the ALJ permissibly considered FNP Seibert's specialization under 20 C.F.R. § 404.1520c(c)(4), which expressly provides "[t]he medical opinion . . . of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion . . . of a medical source who is not a specialist in the relevant area of specialty." As such, it was entirely appropriate for the ALJ to consider that FNP Seibert is a family medicine provider who is not an expert in mental health, neurology, or pulmonology. Plaintiff's assertion that specialty should only be considered when multiple opinions are equally consistent and supported,[4] (Pl.'s Reply, ECF No. 12 at 6), is unpersuasive. While the factors of supportability and consistency are "the most important factors" in considering a medical source's opinion, the ALJ may consider other factors listed under 20 C.F.R. § 404.1520c(c), including specialization. 20 C.F.R. § 404.1520c(b)(2).

Second, the ALJ reasonably concluded that FNP Seibert's opinion as to Plaintiff's mental health limitations lacked support from clinical findings and sufficiently articulated her reasoning. The Court requires "the ALJ to set forth the reasons for [her] decision," *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000) (citation omitted), such as to ensure that there is "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505 (citation omitted). The ALJ's finding as to supportability easily meets this standard. Per 20 C.F.R. § 404.1520c(c)(1), "[t]he more relevant the objective medical evidence and

---

[4] It is worth noting that the record is devoid of multiple opinions because Plaintiff did not receive mental health treatment during the relevant time period beyond his limited visits to FNP Seibert.

supporting explanations presented by a medical source are to support [her] medical opinion(s) . . . the more persuasive the medical opinions or prior administrative medical finding(s) will be." The ALJ considered, and Plaintiff's mental status examinations reflect that, Plaintiff's depression and anxiety were improved, stable, and well-controlled when his medication was properly managed. (AR 17–18, 21). In considering the supportability of FNP Seibert's opinion, the ALJ evaluated the relevant objective medical evidence and articulated that "there is no indication that the claimant could have limitations in this opinion based on these impairments." (AR 21). The ALJ does not, as contended by Plaintiff, state that the described impairments could not result in FNP Seibert's assessed limitations. (Pl.'s Br., ECF No. 9 at 20–21). The ALJ merely states that the record, including the conservative nature of Plaintiff's treatment and his activity level, does not support that Plaintiff's impairments resulted in the extreme limits as opined by FNP Seibert. Accordingly, the ALJ's conclusion is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," thus meeting the deferential standard for evaluating ALJ opinions. *Biestek*, 587 U.S. at 103 (citations omitted).

Finally, the ALJ sufficiently articulated her finding that FNP Seibert's opinion is inconsistent with the treatment record. Per 20 C.F.R. § 404.1520c(c)(2), "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Here, FNP Seibert cited physical impairments including syncope, a prior head injury, and a lung nodule, as support for Plaintiff's limitations. (AR 656–659). However, the limitations she describes are related only to Plaintiff's mental state. (*Id.*). The ALJ found this created an inconsistency, as in Plaintiff's physical examinations, he reported improvement in his shoulder pain, that he was exercising several days per week despite his overall alleged pain, had no history

13

of physical therapy, and only takes over-the-counter medication twice per day for pain. (AR 18, AR 21). Plaintiff's assertion that the consistency analysis regarding Plaintiff's physical symptoms in FNP Seibert's report "makes no sense" is unconvincing. (Pl.'s Br., ECF No. 9 at 21). It is clearly appropriate for the ALJ to consider FNP Seibert's report in its entirety when considering consistency, particularly given that the opinion itself is titled "Medical Opinion-Physical Conditions" and opines as to physical impairments. (AR 656).

In sum, the ALJ appropriately weighed relevant considerations, and the ALJ's findings are supported by substantial evidence.

### B. The ALJ Properly Devised Plaintiff's RFC, as the ALJ is not Required to Adopt a Specific Medical Opinion and is Ultimately Responsible for Assessing RFC.

Plaintiff claims the ALJ erred in formulating Plaintiff's mental RFC after discounting the opinion of FNP Seibert, which was the only medical opinion regarding mental functioning on the record. (Pl.'s Br., ECF No. 9 at 22–23). The Court disagrees.

In developing RFC findings, an ALJ is not bound by any medical opinion. 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."). Instead, the ALJ must independently analyze the relevant evidence to determine the claimant's RFC, and it is the ALJ alone who must formulate the RFC. 20 C.F.R. § 404.1545; *Chandler*, 667 F.3d at 359 ("[T]he ALJ is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision."); *see also Titterington v. Barnhart,* 174 F. App'x 6, 11 (3d Cir. 2006) ("There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC.").

14

Here, the ALJ provided substantial evidence to support her findings, considering medical evidence, opinion evidence, prior administrative medical findings, Plaintiff's testimony, and evidence of Plaintiff's daily activities. *Kirpartick*, cited by Plaintiff, is distinguishable. In that case, after the ALJ rejected the three medical opinions in the record and found the claimant not entirely credible, "there [was] no remaining evidence upon which to show an inconsistency or to base his RFC." *Kirpartick v. Colvin*, No. 16-380, 2017 WL 104968 at *3 (W.D. Pa. Jan. 11, 2017). However, here the ALJ did consider additional evidence in the record regarding Plaintiff's mental health, including that his depression and anxiety were well controlled, his mood was euthymic, and his review of daily living was normal. Accordingly, the ALJ's findings are supported by sufficient evidence and reasoning and the ALJ did not err in crafting Plaintiff's RFC.

### C. The ALJ Provided a Sufficient and Supported Explanation for Discounting the Opinion of Dr. Cornejo Regarding Plaintiff's Left-Hand Use.

Plaintiff contends that the ALJ failed to properly consider Dr. Cornejo's opinion, which in turn invalidates the step five determination regarding Plaintiff's work capacity. (Pl.'s Br., ECF No. 9 at 23–24). Again, the Court disagrees.

An ALJ is not required to adopt a medical opinion in full, even when that opinion is deemed partially persuasive. As previously stated, the ALJ must evaluate the persuasiveness of a medical opinion in accordance with the factors set forth in 20 C.F.R. § 404.1520c, giving particular consideration to supportability and consistency. *Lynch*, 2024 WL 2237961, at *2.

Here, the ALJ found Dr. Cornejo's opinion only partially persuasive, noting "the doctor's statement that [Plaintiff] would need a 'reasonable amount of time' with needed breaks is vague" and that there is "no objective medical evidence of a left thumb impairment[.]" (AR 20). The ALJ determined that Dr. Cornejo's discussion on the alleged hand impairment itself merely reports Plaintiff's subjective view of his limitation, rather than setting forth an objective medical opinion.

15

Indeed, Dr. Cornejo opined that Plaintiff "*may* have difficulty with frequent use of his left hand secondary to his left thumb pain, *per his report*[.]" (AR 619) (emphasis added). The ALJ further noted that Dr. Cornejo's opinion was inconsistent with the record, which showed that Plaintiff received only conservative treatment for his alleged physical impairments. This finding is well supported, as Plaintiff received no documented treatment for hand or thumb symptoms, retained pinch and grip strength, and had "no significant limitations" in fingering and handling small objects. (AR 615–19).

In short, the ALJ sufficiently articulated the basis for finding Dr. Cornejo's opinion only partially persuasive—citing its vagueness, reliance on subjective complaints, and lack of supporting medical evidence.

## CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the final decision of the Acting Commissioner. An appropriate Order will follow.

*Christine P. O'Hearn*
**CHRISTINE P. O'HEARN**
**United States District Judge**